Case number 19, Dutch 7162 et al. Wye Oak Technology, Inc. v. Republic of Iraq and Ministry of Defense for the Republic of Iraq Abalance. Mr. Morag for the Abalance. Mr. Katyal for the Abalance. All right. Mr. Morag, good morning. Good morning and apologies for the delay. May it please the court. I'd like to start with the subject matter jurisdiction issues, if I may. Good morning. This case is a single cause of action for breach of contract. That contract is the broker services agreement, which called for Wye Oak to refurbish military equipment, construct repair facilities, and decommission equipment for scrap sales, all in Iraq, all of Iraqi military equipment. It was negotiated in Iraq, signed in Iraq, and is governed by Iraqi law. And critically, Wye Oak was to invoice Iraq in Iraq and sought to be paid in Iraq. And it is that breach, the breach of contract alleged in the complaint and found by the district court was the non-payment of invoices in Iraq. In light of that, the Fourth Circuit's under clause two of the commercial activities exception cannot stand as law of the case after the Supreme Court's decision in OBB versus Sachs. And it was clearly wrong at the time it was issued in 2011 as well. Mr. Morag, can I ask you a question? Yes. Are you suggesting that it would be law of the case if you agreed with the substance of the ruling? Do you concede that it's law of the case, but that you're saying these exceptions apply, that we shouldn't do law of the case because it isn't correct or because there's an intervening decision, but absent those, you would believe this to be law of the case? Yes, Your Honor. As we lay out in our brief, and it's undisputed, I believe, the law of the case doctrine applies initially. The issue of intervening change in the law and a determination by this court that the Fourth Circuit's decision was clearly erroneous and created a manifest injustice are described in your case law as exceptions to the doctrine. We think both apply. And what that does is that permits you to reconsider the Fourth Circuit's decision. And when you do that, you would be applying the de novo standard of review. Almost nothing else appearing, though, the Sachs decision from the Supreme Court clearly must be the controlling Supreme Court precedent would control over law of the case, would it not? Yes, it is. Yes, it would. And that's why the Supreme was the standard to determine whether it affects your reliance on the Fourth Circuit's decision is whether it's material to the outcome. You would just look at the Fourth Circuit's decision today after Sachs and decide if it's still good law. And we submit that you can only come to one conclusion on that question. And the answer is no. And, you know, this court is very familiar with Sachs. You applied it only two months ago in the jam versus IFC case to make this exact same determination on what conduct is a claim based upon. And here the Fourth Circuit's decision cannot stand because the Fourth Circuit decided that this claim, this breach of contract claim was based upon administrative tasks that Whyoke performed in the United States in connection with the broker services agreement. But that cannot be the gravamen, the foundation, the core of the claim because of two things that the Supreme Court reiterated in Sachs, which other circuits, including this one, had misunderstood before Sachs. And those are that you need to look. Gravamen is the conduct that actually injured the plaintiff. And it's the conduct which, and therefore you have to look at what the plaintiff needs to show in order to prevail, proving that Whyoke conducted administrative tasks in the United States, entitles it to no recovery from Iraq. Indeed, as Judge Lambert's lengthy opinion shows, the basis for Whyoke's recovery in this case was proof of that Iraq breached a contract to pay the pro forma invoices in Iraq. And then the attendant damages that Whyoke suffered in Iraq. So Mr. Morgan, I'm more concerned, I think, about sort of other issues related to law of the case, one of which is the peculiar circumstance of the Fourth Circuit having decided this to begin with. And what I'm trying to understand is why shouldn't your client be made to live with the consequence of its decision to appeal the Fourth Circuit's decision notwithstanding the fact that the case had been transferred? Seems to me you bore the risk that the Fourth Circuit would rule against you because you sought to appeal rather than just go with the fact that the case had been this court. So we're in a sort of peculiar situation in which you're suggesting that a Fourth Circuit opinion on a legal issue somehow binds us in this context. Your Honor, the case law is clear and the Christensen case in the Supreme Court was a situation where you had one, the Federal Circuit decision being considered law of the Seventh Circuit. We would be in the exact same position if Whyoke had filed this case in the district court in Washington, the district judge had rendered the same decision as the Virginia judge, we would have taken interlocutory appeal, and you would have rendered the same decision as the Fourth Circuit. Well, let me ask you, can I test that hypothetical? Because that's another sort of odd aspect in terms of your initial concession that law of the case applies. My understanding is that the Fourth Circuit ruled on a motion to dismiss, that they were determining whether the complaint contains sufficient allegations, if true, to sustain a claim against the defense of immunity, and they said, affirmed the district court judge that you did not have immunity, but on the complaint at the motion to dismiss stage. Suppose there was no transfer, the Fourth Circuit's decision stands, is it your position that the district judge in the Eastern District of Virginia would not have been able to revisit the immunity decision during or after trial? Your Honor, the answer is that the reason we said what we said in our appeal brief is because there's a decision by Judge Roberts in this court that explains that what happens when you make a motion to dismiss on sovereign immunity grounds at the outset is the court looks at the complaint allegations and makes an initial determination whether they state a immunity exception. The Fourth Circuit said they did. At trial, we were not able to, because they're not really disputed, to contradict the factual allegation that Wyoke did perform some administrative tasks in the United States. That was not a factual dispute. Right, but I'm asking you a different question. I'm asking you whether the law of the case doctrine would prevent the district court from revisiting that determination at a later stage in the litigation. Regardless of whether or not they would have agreed with you on if you'd re-raise the immunity question, I want to know whether the Fourth Circuit's decision would be law of the case on the Eastern District of Virginia on that issue. Yes, it would, as well as the mandate rule, and the mandate rule applied to Judge Lamberth as well, because the Fourth Circuit is an appellate court within the federal system. The transfer did not change the relationship between the appellate court and the district court in terms of the Fourth Circuit's decision. But isn't the Fourth Circuit's decision only about the motion to dismiss? I would understand if Judge Lamberth were asked as soon as it came to him, you've refiled a motion to dismiss and made the same arguments. Then I see law of the case. What I don't understand is why, if a district judge is asked at a later stage of the case about immunity, again, the Fourth Circuit's opinion on immunity precludes that. The Fourth Circuit's opinion itself discusses that it would be law of the case, notwithstanding the transfer. The majority decided it would be. The point is that the Fourth Circuit decided, based on a factual assumption that accepted as true one fact, that WYO performed administrative tasks in the United States. The only way the district court, within the rubric of your question about the motion to dismiss, could have come out differently is if it found those facts not met. What we are saying is that the facts were established, but they still do not, as a matter of law, satisfy WYO's burden of pleading an exception to the immunity of Iraq, which Iraq invoked and re-invoked after the Fourth Circuit's decision came down in its answer. It has preserved the issue, and you are the right to decide whether, either because of intervening Supreme Court authority or the Fourth Circuit's decision itself at the time was clearly in error. We don't need to do anything about the Fourth Circuit's error or non-error if we original Fourth Circuit decision, then the Fourth Circuit's decision is no longer binding as law of the case, even to the extent that law of the case is usually binding. Absolutely, Your Honor. That's correct. That is why it appears that WYO is looking for alternative grounds to substantiate the court's jurisdiction and has not identified those either that comply with the FSIA. The waiver argument that they raise is without basis because Iraq preserved the issue of its sovereign immunity. It certainly did not unambiguously, unmistakably, through any conduct post the appeal, affirmatively waive and indicate to the court and to WYO that it was no longer contesting immunity and was conceding the court's jurisdiction, as your precedence would require a finding under the implied waiver exception. What about direct effects, Mr. Morak? What about direct effects? We have this other clause, even if we agree with you that based upon means based upon the gravamen of the suit, the gravamen of the suit is the breach. They also argue that the breach has caused direct effects in the United States. Why is that wrong? Okay, well, first of all, on that, there is no law of the case issue. It's a de novo. It would be de novo consideration of an issue the district court never even decided. So there, the direct effects fail for the same reasons that they failed in any number of cases. The direct effects are not direct and were not felt in the United States. But if the district court didn't decide it, why wouldn't we just send it back for district court consideration in the first instance? Well, it was fully briefed before the district court and it chose not to for the same reason the Fourth Circuit chose not to. These are issues that this court can resolve on its own. It does that in Bell Helicopter versus Textron. You just look at the allegation, and it's a legal question whether that... Direct effects is a legal question, not a question of fact as to what happened in terms of what's going on in the United States. When the facts are not disputed, it's a legal question of whether the facts alleged establish, satisfy the test of being a direct consequence of the sovereign's breach. But we're beyond allegation. We had a trial. And my question is, why wouldn't we let the district court look at the record and determine based on his understanding of what happened at trial, whether there were direct effects in the United States? Your Honor, that is an option you have. But I think when you look at what is alleged as a direct effect, you essentially have considered these types of arguments in other cases and have affirmed that they are not direct effects. How about McKesson? Why is this case not closer to McKesson than it is to Zidane? It isn't just the payment of money. You had the operation running from somewhere in Pennsylvania. You had the folks who were doing all this scrap stuff over there of necessity, but it was being run from Pennsylvania. Because, Your Honor, McKesson involves a situation where the plaintiff was an investor. It owned part of the plant that was expropriated. This is simply a US contractor who had some of its employees in the United States and was performing administrative functions here. There was no intended performance from the United States. This wasn't a contract to supply US goods or anything like that. It was a contract with that the only connection is a US contractor who by necessity had employees and operations in the United States. Well, yeah, but these people who were doing all this scrap work over in Iraq, they had to get their directions from the people in Pennsylvania. That is what to scrap, what not to scrap, and so forth. Basically, if you had the contractor analogy, the people in Pennsylvania were the contractor and the folks in Iraq were the subs or the carpenters and so forth. I don't see why this doesn't have a direct effect and why we shouldn't send it back. I think Judge Lamberth was wrong on the commercial activity, but this is a vast record. He can take another look at it under the third clause and reach his decision. Well, Your Honor, if I'm permitted to respond, I think that what you describe is true of every US contractor case and not distinguishable. The decisions about what to scrap, what to refurbish, were all to be made in Iraq between Wyoke's personnel there and the Iraqi Ministry of Defense and the US authorities. This is not a situation any different from the many cases which involved no obligation of payment in the performance in the United States. This is really helm-rich in pain, which you more recently ruled on. There is no McKesson connection because of the absence of any interest in any business in Iraq. What about the potential interference with the other contracts that they were trying to make in the United States? I thought there was some allegation or evidence of a relationship with other businesses that was interfered with precisely because Wyoke said, we haven't been paid yet for these invoices and the like. Yes, Your Honor. Judge Lamberth made an explicit finding that the subcontract with CLI, which was the company that was supposed to do the construction work, had not been signed, had not been entered into. That was a factor that this court in helm-rich in pain specifically relied upon as to why, therefore, any effect on subcontractors was not a direct effect. Not an effect on subcontractors. They didn't have a contract yet. I'm talking about an effect on Wyoke. We have a tort that is interference with a business relationship. That's a well-established thing. If you're developing a business relationship with someone and another person comes along and interferes with that, that's a harm. What I'm asking is, why isn't it the case that Wyoke was affected in the United States by the alleged interference with its relationship with CLI because of the breach? Your Honor, that is a theory that Wyoke has never pleaded, not before the district court, not before this court. There is no tortious interference. First of all, Iraq breached a contract. There is no tort claim against Iraq in this case. I'm not saying they have to make the elements of a claim because all we're doing is looking for direct effects. I'm just suggesting that it's no answer to say, but they didn't have a contract with these other people. Exactly. They didn't have a contract, they say, because Iraq breached the agreement. Why isn't that a direct effect? We were on the verge of making a contract and we weren't able to do it because of the breach. The contract we would have had was in the United States. Why does that not count as direct effect? Because that was the precise argument raised in Helmer-Champaign that the Helmer-Champaign would have entered into the subcontract but for Venezuela's breach. That didn't work there. What worked in Carnival Cruise Line was a situation where the subcontracts were an clearly contemplated these U.S. subcontracts. That was considered a direct effect. But absent the actual contract, there is no direct effect because it just doesn't count. It's not direct. There's an attenuation that this court has said breaks the causal chain. All right. If there are no more questions, then we'll hear from you, Mr. Katyal. Thank you, Judge Henderson. I may please the court, Neal Katyal for Wyok. As General Petraeus testified, Wyok and Iraq entered into a commercial contract with massive military and diplomatic importance, but Iraq refused to pay what it owed and Wyok's CEO was Iraq doesn't dispute it breached the contract, nor does it dispute that Wyok suffered damages, yet Iraq is saying it should pay nothing. That's wrong. On jurisdiction, they must overcome four independent bases, waiver, law of the case, the merits of the second clause, and the merits of the third clause. Judge Henderson, even if you think the merits of the second clause cut against us, there's still three independent things they'd have to run the table on. Why don't you concentrate on the third clause? Sure. I think what you just heard my friend say on the other side about the third clause is that we never argued anything about CLI and the withdrawal. No, absolutely. We isolated four different direct effects in our briefing below. I know it's Judge Henderson's question. I want to say enumerate those four direct effects, please. Absolutely. The first was payment to a United States bank, which we designated. Isn't that something that would be normally appearing in contracts between the United States entity and a foreign sovereign, so that you're writing the direct out of the statutory exception, aren't you, if you say that's enough? No, Your Honor. I think direct just refers to is there any sort of intervening cause. Here, the contract itself with the sovereign gave Wyok the ability to pick the place of payment, just as actually the contract in Weltover did. There's no intervening cause. Wyok, under the agreement that Iraq signed, agreed to use the Pennsylvania bank. That is a direct effect. Now, I know you might not feel it's substantial, but the Supreme Court in Weltover said that's not the test anymore. That's the first direct effect. The second is the one I was referring to with Judge Henderson, the cutoff of capital and personnel. We litigated this below, and they put in zilch, not a word, which is why we think they've waived all of these sovereign immunity arguments, not just on Clause 2, but on Clause 3 as well. We argued, and this is at Joint Appendix, page 573, something the district court found, that because Iraq breached the contract, that cratered the agreement with CLI. We had a verbal agreement. They were performing under the agreement, but they needed a guarantee of with McKesson enough to qualify as a direct effect. The third direct effect, and this is one I understand some members of the panel have disagreed on at various points, is the targeting of a U.S. corporation. Our argument here below was that Iraq specifically targeted a U.S. company it knew would feel the loss of the United States. Wyok isn't some random company. They were specialized work. Targeting by whom, though, Mr. Katyal? Targeting by whom? Targeted by Iraq for breaching this agreement. Iraq knew that by breaching the agreement, it would cause pain in the United States. The agreement itself recites that Wyok is a United States company. The disagreement that two members of this panel had in EIG was about whether or not there are intervening causes at issue in that case. Here, there are no intervening causes. Iraq breaches the agreement. That directly harms a United States company. I'm not sure that's all of our disagreement, but perhaps it's at least part of it. What is the evidence that it was Iraq's intention to target this company? I mean, it just seems circumstantial that it happened to be a U.S. company, but where's the evidence and the record of actual maliciousness in terms of targeting of a U.S. company? Again, I don't think it needs maliciousness, Judge Jackson. I don't think that's a test. It just requires targeting. Here, Iraq knew that Wyok was a United States company and performing a critical mission. The agreement itself recites just how critical this mission is to the United States and to Iraq. It's critical to, for example, the withdrawal of United States forces. General is very telling. I thought your targeting argument was more about this Zana or whatever, more of a fraud argument that Zana was a crook all along. That's part of it, Your Honor, but it isn't the only part of it. It's also just the cutoff of funds with the refusal to pay a huge bill to a United States company. Then the fourth point is diplomatic effects and all of the stuff that we isolate, the immediate consequences of geopolitical effects that by withdrawing from this contract that had massive impact on United States personnel, United States foreign policy, and the like. Does the current record really bear that out? What's your position as to whether or not we should send it back so that Judge Lindberth can take a look at that? Absolutely, Judge Jackson. They don't get another bite at the apple. We litigated this for even though sovereign immunity is their burden. I think this court, Judge Santel, your opinion and belief social development and the court's opinion in Al-Haddad says they bear the burden of proof. If the evidence is an equipoise at all, you give the doubt against sovereign immunity. Here, they made zilch of an argument in the district court. Judge Jackson, this book brings me to the law of the case argument or waiver arguments. I think however you want to phrase it, as this case came to the district court, they picked the Fourth Circuit. They said the Fourth Circuit decisions would control. You even heard my friend again today say something very similar. Now, in the district court, what do they say? They give the district court a whopping one sentence on sovereign immunity with respect to everything, clause 2 and 3, and that is adjoined appendix 505, quote, the court shall determine its jurisdiction accordingly. Mr. Kutyal, can I just tell you, I sense some tension in your argument on this point. To the extent that the Fourth Circuit's argument or decision was law of the case, which I am struggling to see, but assuming that it is, then how is it that Iraq can be faulted for not seeking to revisit that unambiguously once the case was transferred? It seems as though everybody agreed that the Fourth Circuit had bound them with respect to this issue. I don't know that we can suddenly say, well, because they didn't re-raise it and have a whole long brief about it, that they now have somehow waived it. Judge Jackson, this is a sovereign immunity. Both clause 2 and 3 is a fact-specific determination. Here, we made all of these arguments that they were sovereign immune. They just said, determine jurisdiction accordingly, and they bear the burden of proof. I heard my friend say on the other side, yeah, we're just contesting the law, not the facts. I think that's exactly what the law of the case doctrine forbids. As you said, they should assume the risk, having agreed in the Fourth Circuit to one set of rules, to not be able to challenge it again. Judge Sentelle, you said, well, what if the Supreme Court makes a different change in law? That's binding. We absolutely agree with that. The problem for them here is that that change in law has to be material. That's what this court's decision in McKesson said. Judge Henderson, you were on that panel. Our point to you is that the Sachs decision, it's not about contract, reaches a contract, which are very different for the reasons our brief explains. It's a clause 1 case, not a clause 2 case. At the very least, we think for whether you want to call it waiver or law of the case, they should have made some argument about Sachs below. Everything you just heard my friend say in his 18, 19 minutes was something that- I don't see why the government question would be any difference in clause 1 and clause 2. I fail to see why Sachs isn't a material decision. Well, I think the Supreme Court itself, Judge Sentelle, went out of its way in Sachs to say they're only deciding clause 1, that there's a lot of unique aspects to each of these clauses. I at least don't think it's a controlling change. I don't see how they could consistently come out differently on clause 2, if you read the Chief Justice's reasoning on in Sachs. I very much think, Judge Sentelle, they could because of the difference in the language, because clause 1 refers to a commercial activity by the foreign state. Clause 2 is a lit looser. It's an act performed in the United States in connection with a commercial activity. Yes, Mr. Katyal, but the treatise that you all cite in your brief, which I happen to look up, makes it very clear. This is the Sanchez treatise, makes it very clear that clause 2 also applies to the defendant's conduct. It's an act of the defendant. That's what the whole thing is about. I don't understand how anybody could think that the Fourth Circuit's interpretation of it, an act of the plaintiff, could be correct. Judge Jackson, we're not arguing that that isn't a way to satisfy clause 2, but nothing in that treatise says it's the only way. There's a really important textual point that we make in our brief because clause 2 refers to a foreign state. This is at our addendum to the brief at page 3, which reproduces it. A foreign state shall not be immune from the jurisdiction of courts in any case in which the action is based upon an act performed in the United States in connection with commercial activity elsewhere. The clause there doesn't specify who must perform the act in the United States, whereas clauses 1 and 3 do exactly that. Now, to be sure, there just aren't that many clause 2 cases, but that's because any case in which there is foreign sovereign activity in the United States already meets clause 1 and sometimes meets clause 3. That's why you just don't have precedent on it, but they don't have a case the other way saying that this wouldn't satisfy it. Can I just ask you, Mr. Crutchfield, to entertain my hypothetical with Mr. Morgue because I fear that I don't understand law of the case. It seems to me that the Fourth Circuit, to the extent that law of the case is deciding the same issue in the same way or whatever, that it's a different issue when immunity is raised during or after trial than it is when immunity is raised testing the allegations of the complaint. Mr. Morgue says, oh, yes, I see that, but we don't have any reason to think that the facts were, in fact, different after trial with respect to prong 2, which is why we didn't raise it. I'm asking whether the district judge was precluded from taking another look at it because of the Fourth Circuit's opinion. Setting aside transfer, so my hypothetical assumes we don't have a transfer. The Fourth Circuit says what it says, and then we have a trial, and then a rock hypothetically says we are immune, district judge. Is law of the case preventing the district judge from deciding that at that point? Setting aside waiver, which I think is a separate problem, but just if this were raised somehow to the district court, I think this court's decision in Shirley v. Sebelius back in 2012, and Judges Sintel and Henderson were on that decision, I think answers that, Judge Jackson, by saying ordinarily, law of the case would apply so long as you had a fulsome legal adjudication and there isn't some massive change in the facts. Here, my friend on the other side is conceding. After this long trial, no change in the facts. Now, the only question is, is this a material intervening decision in Sachs? Look, I can imagine some arguments for why it is. I'm not saying it's impossible, but boy, as a matter of prudence and fairness to the district court and to us, that should have been an argument that was made in the district court. You breathe the word Sachs there, then every breathe the word Nelson, the predecessor case in the Fourth Circuit. They go and they in the Fourth Circuit. When it comes to DC, what do they say? That one sentence I gave you, nothing more. Now, here we are all litigating, having to try and figure out whether or not Sachs applied, how it changed the law and so on. There's no precedent for this court going and jumping past waiver and law of the case on something like this. This has real world consequences. You're linking waiver and law of the case. They're not in the same posture here, are they, Mr. Katchel? They're two very separate arguments, Your Honor. They both paint in the same exact direction, which is law of the case. I think as Judge Jackson said, look, they agreed to the Fourth Circuit. Are you still willing to say that they come together if one of us at least, and maybe more, would be convinced that waiver is not present? The law of case would still be present. I think you want to delink those. Excuse me, sorry, I couldn't hear that. You want to delink them? Yes, exactly. They are two separate arguments, as I said, Your Honor, at the outset. We certainly think clause three is a separate argument as well and requires no remand. They had their bite at the apple to argue all of the direct effects in the district court. They said nada about it. It's totally unfair now after we've expended huge amounts in a trial to say, oh, we now have some clause three arguments. That time to do that was at the trial. The district court found these facts. Can I just ask you a question? You keep saying we spent all this time, we, OIO, on this issue before the district court and they said nothing. I'm still wondering why you're spending time on it if that's their burden and if law of the case, the Fourth Circuit has already said there's no immunity. Were you trying to prove to the district court something that you didn't have to because law of the case already took care of it? 100 percent, Your Honor. It's always their burden, but we as a matter of belt and suspenders wanted to be absolutely prudent. As you can imagine, this is one of the most important, this is the most important thing OIO has ever faced. As a matter of careful lawyering, we did that, but we certainly don't think the fact that we developed a record, made all of these arguments and the district court found them all, including the facts on clause three in our favor, should somehow hurt us and penalize us and mean that they get to reopen things. We've been clear from the very start, from the time this case was in the EDBA, what our arguments have been. Their arguments have shifted, morphed and changed over time to the point where here we are now, almost two decades later, having to litigate some of this stuff that was once upon a time litigated in the Fourth Circuit, but definitely not litigated below in the district court. They bear the ultimate burden here. I think that's what the precedents of the D.C. Circuit have said time and again. If there are no more questions, Mr. Kochel, I know we told you that you would have two minutes on damages, but I'd like to amend that and say if neither of my colleagues has any questions about the damages, we'd like to take that on the briefs. No questions. Judge Jackson? No questions. All right. Judge Henderson, on the cross appeal about the two complementary compensation things, is that included in the question? Yes. All right. Mr. Morick, why don't you take two minutes? Okay. Thank you, Your Honor. I just want to make one point on the burden of proof. What you said in Bell Helicopter and what Wyoke actually acknowledged itself in its proposed findings of fact was that it had the burden to articulate an FSIA exception that worked on the facts it alleged. In Bell Helicopter, what you held was the district court did not err in ruling that Bell failed to meet its initial burden, and that even though it had articulated all of these direct effects that it believed occurred in the United States, and you held that because you decided they did not qualify as direct effects. That's the argument we're making. They haven't come forward with a theory of an exception that is legally plausible and that would survive if we said nothing else after that. Mr. Katyal says that not only have they done that, but that you all said nothing before the district court as they tried. Is that true? And why shouldn't we consider your argument with respect to this therefore somehow waived about the argument that they haven't done enough? Your Honor, the issue is Germany case in which Judge Santelius sat. Germany had raised an argument for the first time on appeal against the district court's subject matter jurisdiction, and this court held that you would consider that belated argument if it were of any consequence to the jurisdictional determination because of the unique fact that subject matter jurisdiction cannot be created by forfeiture of arguments that can be possible as long as you accept that we preserve the issue of sovereign immunity. And we did that because there was no unmistakable and unambiguous waiver of that point to satisfy the FSIA. Nelson was cited to the Fourth Circuit. Nelson was cited by the Fourth Circuit. With respect to Sachs not being relevant to Clause 2, this court in Odhiambo recognized that structurally the based upon phrase applies to every all three categories of the commercial activities exception. You applied it in just in again two months ago in JAM versus IFC. You considered the clauses one and two in tandem in doing your based upon analysis. So I think that one's clear. With respect to this issue about no case establishes that the plaintiff's conduct can't be for purposes of Clause 2, we cited the AAA case. It's in the briefs. It's out of the Sixth Circuit. That's exactly what it holds on this on the similar record of a U.S. contractor seeking to predicate jurisdiction on its U.S. activities, administrative activities. On the issue of the payment from the request for payment, Judge Santel, you were exactly right. The demand for the payment to the account in the United States was sent by Wyoke to Zena. There is no evidence whatsoever that that was communicated to Iraq. Iraq agreed to make payments in Iraq at the Office of the Ministry of Defense in Baghdad. So that doesn't count because it's not, as you said, something between the sovereign defendant and the plaintiff. All right, Mr. Morag, you need to wind it up. Those, in that case, those are the points. All right. All right. Thank you, gentlemen. And Madam Clerk, if you call the next case.
judges: Henderson, Jackson, Sentelle